UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRADLEY W. FOSTER, | Case No. 19-cv-260 (JNE/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| ROSS LITMAN and MARK PHINNEY, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint. (Dkt. 68.) For the reasons discussed below, the Court denies the motion to amend.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated the present action by filing a Complaint against St. Louis County Sheriff Ross Litman ("Sheriff Litman") and St. Louis County Deputy Mark Phinney ("Deputy Phinney"). (Dkt. 1.) On April 16, 2019, Sheriff Litman and Deputy Phinney filed an Answer to the Complaint in their official capacities. (Dkt. 9.) The gravamen of the Complaint centers around the August 3, 2015 transport by Deputy Phinney of Plaintiff, Bradley Foster (who is presently under an order for civil commitment to the Minnesota Sex Offender Program for an indeterminate period at Minnesota Correctional Facility-Moose Lake), to the St. Louis County Courthouse in Hibbing, Minnesota for a court proceeding in a vehicle with no seatbelts or padding, while he was restrained in a

waist chain and leg-irons (even during his court proceedings) for a total of 4 hours, which he alleges resulted in significant injuries to his ankles. (Dkt. 1 ¶¶ 8, 11, 15-19.)

On April 25, 2019, this Court issued its pretrial scheduling order (Dkt. 13), which set May 28, 2019 as the deadline for amending pleadings and adding parties.

On May 31, 2019, Sheriff Litman and Deputy Phinney filed an Answer in their individual capacities. (Dkt. 22.) On the same date Sheriff Litman and Deputy Phinney filed a Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 23.) Defendants moved the Court for an order dismissing with prejudice all of the claims in the Complaint, except for the claims against Deputy Phinney and St. Louis County under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. (Dkt. 25.)

On October 21, 2019, Plaintiff sought to amend the Pretrial Scheduling Order in order to extend the time for discovery. (Dkt. 58.) Plaintiff made no request to extend the time for amending the pleadings. On November 1, 2019, the Court notified Plaintiff that it would rule on an amended scheduling order once there was a ruling on the motion for judgment on the pleadings. (Dkt. 61.)

On January 3, 2020, this Court issued a Report and Recommendation recommending that Defendants' motion for judgment on the pleadings be granted and recommending the following: dismissing with prejudice Plaintiff's claims against all Defendants under 42 U.S.C. § 1983 based on violations of Minnesota law or the Minnesota Constitution; dismissing with prejudice Plaintiff's Fourth Amendment claims as part of his 42 U.S.C. § 1983 Complaint against all Defendants; dismissing without

2

prejudice Plaintiff's claims against Sheriff Litman pursuant to 42 U.S.C. § 1983; dismissing without prejudice Plaintiff's State Law and State Constitutional claims against Deputy Phinney in his individual and official capacities; dismissing without prejudice Plaintiff's State Law and State Constitutional claims against Sheriff Litman in his individual capacity; and dismissing with prejudice Plaintiff's State Law and State Constitutional claims against Sheriff Litman in his official capacity. (Dkt. 62.) On February 12, 2020, Plaintiff filed objections to the Report and Recommendation. (Dkt. 68.)

On January 3, 2020, the Court issued an Amended Pretrial Scheduling Order. (Dkt. 64.) The Amended Pretrial Scheduling Order did not affect the May 28, 2019 deadline for amending pleadings.

On February 12, 2020, Plaintiff filed the present motion to amend. The proposed amended complaint, as discussed in more detail below, reasserts claims under the equal-protection component of Minn. Const. art. I, § 2 (*see*, *e.g.*, Dkt. 68-2 ¶¶ 35, 53, 62, 75, 83, 95, 103); asserts a new due process claim under Minn. Const. art. I, § 7 (*see, e.g.*, *id.* ¶¶ 36, 54, 76, 83, 96, 103); continues to assert claims against Defendants under the Fourth Amendment to the Constitution (*see*, *e.g.*, *id.* ¶¶ 4, 28, 32-33, 41, 43, 51, 60, 62, 72-73, 83, 92-93, 102-03); reasserts various federal Constitutional claims against Sheriff Litman with new allegations regarding his role (*see*, *e.g.*, *id.* ¶¶ 14-16, 25-26, 45, 65, 85, 88, 105); asserts new state new claims relying on Minn. Stat. § 253B.03, subd. 1(a), Minn. Stat.§ 609.2325, subd. 1(a), and Minn. Stat. § 626.5572, subds. 2, 17 (*see*, *e.g.*, *id.*

3

¶¶ 37-40, 55-59, 63, 77-81, 97-101); and asserts a claim for punitive damages (*id.* ¶¶ 4, 111).

On February 18, 2020, United States District Judge Joan N. Ericksen issued an Order adopting the Report and Recommendation and accepting the recommended disposition. (Dkt. 72.)

## II.   LEGAL STANDARD

Plaintiff's Motion to Amend is generally governed by Rules 15 and 16 of the Federal Rules of Civil Procedure, and Local Rule 16.3 of the Local Rules for the District of Minnesota.

### A.   Rule 15

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g., Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted). The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute right to amend." *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182

4

(1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.").

In this case, where Defendants have alleged that the proposed amendments are futile, this Court must determine whether the proposed claims state a claim for relief at this stage of the case. *See Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard . . . .") (citation and marks omitted); *see also Hillesheim*, 897 F.3d at 955; *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim . . . ."). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 550 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

5

(quoting *Twombly*, 550 U.S. at 556).  Analysis under Rules 15 and 12(b)(6) generally requires a court not consider matters outside the pleadings to determine whether leave to amend should be given.  *See Arias v. Am. Family Mut. Ins. Co.*, No. CV 13-1681 (PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (finding "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15) (citing *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002)).

**B.     Rule 16**

As pointed out by Defendants in their opposition (Dkt. 73 at 2), the Court's Pretrial Scheduling Order requires that motions which seek to amend the pleadings and add parties must be served on or before May 28, 2019.  (Dkt. 13 at 2.)  Plaintiff has not brought a motion to amend the Pretrial Scheduling Order; he only seeks to amend under Fed. R. Civ. P. l5(a)(2) and Local Rule 15.1.  (Dkt. 79 at 3.)  Plaintiff asserts in his Reply that a motion to amend the Pretrial Scheduling Order "is premature unless and until the Court determines whether or not to allow the FAC to be filed."[1]  (*Id.* at 4.)

Under Rule 15(a), leave to amend should be granted liberally, if "justice so requires."  However, the Eighth Circuit has held that when a party has filed a motion to amend the complaint after the deadline provided in a court's pretrial scheduling order, then the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order.

---

[1]     The Court notes that while it does not typically allow reply memoranda on non-dispositive motions and Defendants oppose the Plaintiff's Reply (Dkt. 77), the Court has considered the Reply given that it can be difficult to anticipate the futility arguments brought in an opposition to a motion to amend as part of a movant's original papers, especially given Plaintiff's *pro se* status.

*See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437-38 (citation omitted).

Scheduling orders pursuant to Rule 16(b)(1) "assure[ ] that at some point both the parties and the pleadings will be fixed . . . ." Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment. Moreover, "Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'" *Archer Daniels Midland v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Similarly, Local Rule 16.3 requires a party moving to modify a scheduling order to "establish good cause" for the proposed modification.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "[T]he 'good cause' standard [of Rule

7

16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted).

While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). In short, Rule 16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive or inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted).

With these standards in mind, the Court turns to Plaintiff's motion for leave to amend.

## II. ANALYSIS

### A. Whether Plaintiff Has Established Good Cause Under Rule 16

Plaintiff only makes the following argument with respect to good cause:

> Plaintiff has made every effort to compel defendants to cooperate with discovery rules, asked the court for intervention, has made repeated attempts to receive discovery in a timely manner; and has been forced to already seek amendment of the *Scheduling Order* just to attempt to engage in discovery. Given that Plaintiff is unlawfully held in physical captivity (The captivity issue is not a part of this action.) by Minnesota government, Plaintiff can establish *good cause* for amendment.

(Dkt. 79 at 4.)

In reviewing the proposed amended complaint, the Court notes that the proposed amendments do not pertain to new facts or requests for relief that were not available to Plaintiff when he initially brought this action. Instead, Plaintiff's amendments appear primarily to be a reaction to the Report and Recommendation that recommended dismissal of his state claims, Fourth Amendment claims, and claims against Sheriff Litman. In other words, there was nothing precluding the amendments Plaintiff now seeks from being included in the operative Complaint at the time it was filed or for that matter precluding him from remedying any defect as soon as Defendants filed their motion for judgment on the pleadings in May 2019. In addition, nothing precluded Plaintiff from alleging a claim for punitive damages before the May 28, 2019 cut-off for amendments. *See Orange Rabbit, Inc. v. Franchoice, Inc.*, No. 19-CV-687 (MJD/ECW), 2020 WL 2191947, at *2 (D. Minn. May 6, 2020). Instead, Plaintiff inexplicably waited until February 2020 to bring the present motion. As such, the Court finds that Plaintiff was not diligent and the motion to amend is denied on this basis.

In any event, the Court will also address whether the amendments set forth in the proposed amended complaint are futile under Rule 15.

**B.    State Law Claims Against Defendants Related to Transport**

The original Complaint asserted claims under Minn. Stat. § 253B.05, subd. 2; Minn. Stat. § 253B.07, subd. 2b; and Minn. Stat. § 253B.10, subd. 2. (*See, e.g.*, Dkt. 1 at 9 n.1.) These claims were dismissed by the Court, in part, on the basis that the protections afforded under these statutes did not apply to the transport at issue as alleged

9

in the Complaint. (Dkt. 62 at 11-15, *as adopted by* Dkt. 72.) Plaintiff no longer appears to be relying on these statutes in his proposed amended complaint. (Dkt. 68-2 at 12.) The proposed amended complaint continues to contain a number of general allegations that Defendants violated Plaintiff's rights under unspecified Minnesota statutes. (*See, e.g.*, Dkt. 68-2 ¶¶ 41, 43-44, 46.) Plaintiff also appears to assert new state law claims pertaining to his transport under Minn. Stat. § 253B.03, subd. 1(a) and Minn. Stat. § 609.2325, subd. 1(a).[2] (*See, e.g.*, Dkt. 68-2 ¶¶ 37-40, 55-59, 63, 77-81, 97-101.) As this Court set forth previously in its Report and Recommendation, to the extent that Plaintiff is asserting these state law claims under 42 U.S.C. § 1983, such claims are futile because "[v]iolations of state law do not state a claim under 42 U.S.C. § 1983." *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000).

With respect to Minn. Stat. § 253B.03, subd. 1(a), Minn. Stat. § 609.2325, subd. 1(a), and Minn. Stat. § 626.5572, the proposed amended complaint largely paraphrases the protections set forth in these statutes. (Dkt. 68-2 ¶¶ 37, 38-39, 55, 56, 57-58, 63, 77-81, 97, 100-101.) As far as this Court can discern from the proposed amended complaint, Plaintiff asserts that the use of restraints on August 3, 2015 on his person as a vulnerable committed sex offender during his transport to and from a court proceeding, as well as his transport in a vehicle on this date with no padding or seat belts, violated these statutes.

---

[2] The proposed amended complaint also references Minn. Stat. § 626.5572, subds. 2, 17, which are definitions of "vulnerable adult" and "abuse" that Plaintiff appears to rely upon with respect to his claim under Minn. Stat. § 609.2325. (Dkt. 68-2 ¶¶ 38-40 56-59, 63, 78-81, 98-102.) These definitions do not pertain to any cause of action as it relates to the facts alleged in the proposed amended complaint, but are primarily related to the reporting of maltreatment of vulnerable adults.

10

Defendants contend that any proposed claims under Minn. Stat. § 253B.03, subd. 1(a) and Minn. Stat. § 609.2325, subd. 1(a) are futile because there is no state-law cause of action under either section 253B.03, which is part of the Minnesota Commitment and Treatment Act ("MCTA"), or section 609.2325, a criminal statute. (Dkt. 73 at 11-12.) Plaintiff does not directly address this argument in his Reply, instead asserting that Defendants can make these arguments as part of a motion to dismiss. (Dkt. 79 at 12.) Section 253B.03, subd. 1(a) provides:

> Subdivision 1. Restraints. (a) A patient has the right to be free from restraints. Restraints shall not be applied to a patient in a treatment facility unless the head of the treatment facility, a member of the medical staff, or a licensed peace officer who has custody of the patient determines that they are necessary for the safety of the patient or others.

Minn. Stat. § 253B.03, subd. 1(a). The Court is unclear how this statute assists Plaintiff given it provides a peace officer, such as Deputy Phinney, the authority to place a patient, such as Plaintiff (who is civilly committed), in restraints if necessary for the safety of Plaintiff or others. *See id.* In any event, courts have concluded that there is no private cause of action under § 253B.03. *See Semler v. Ludeman*, No. A08-1477, 2009 WL 2497697, at *3 (Minn. Ct. App. Aug. 18, 2009) ("Section 253B.03 provides civilly committed persons the same grievance procedure required under the patient's bill of rights. *See* Minn. Stat. § 144.651, subd. 20 (requiring facilities to have 'written internal grievance procedure that sets forth the process to be followed; specifies time limits; provides the assistance of an advocate; requires a written response; and provides for a timely decision by an impartial decision maker'). In this way, the legislature has provided a remedy for rights granted in section 253B.03. As the supreme court noted in

*Becker*, courts should avoid imputing a cause of action where a statute has explicitly provided an alternative remedy. 737 N.W.2d at 207. For this reason, we do not imply a cause of action under either statute.") (cleaned up); *Kunshier v. Minnesota Sex Offender Program*, No. A09-0133, 2009 WL 3364217, at *7 (Minn. Ct. App. Oct. 20, 2009 (finding "no cause of action provided under . . . chapter 253B . . . ."). Because there is no private cause of action under § 253B.03, the claim is futile and the motion to amend to add the claim should be denied on this additional basis.

Plaintiff's claims under Minn. Stat. § 609.2325 are similarly futile. Section 609.2325 makes it a crime when:

> A caregiver who, with intent to produce physical or mental pain or injury to a vulnerable adult, subjects a vulnerable adult to any aversive or deprivation procedure, unreasonable confinement, or involuntary seclusion, is guilty of criminal abuse and may be sentenced as provided in subdivision 3.

Minn. Stat. § 609.2325.

As it relates to claims based on criminal violations of Minnesota law, the Minnesota Supreme Court has found that "a criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides." *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990); *see also Summers v. R & D Agency, Inc.*, 593 N.W.2d 241, 245 (Minn. Ct. App. 1999). There is nothing in § 609.2325, either expressly or by clear implication, that gives rise to a civil cause of action, and therefore the claim is futile. *See Semler v. Finch*, No. A06-1178, 2007 WL 1976751, at *2 (Minn. Ct. App. July 10, 2007) ("Neither statute on which Semler relies expressly or impliedly permits a civil cause of action.") (citing Minn. Stat. § 609.2325, subd. 1).

**C.    State Constitutional Claims**

    **1.    State Equal Protection Claim**

The proposed amended complaint continues to assert equal protection claims under the Minnesota Constitution Art. I, § 2. (Dkt. 68-2 ¶¶ 35, 53, 62, 75, 83, 95, 103.) With respect to Plaintiff's equal protection claim, this Court previously recommended dismissal of this claim, as adopted by Judge Ericksen, on the following grounds:

> Defendants are correct that "unlike a federal Equal Protection violation claim, 42 U.S.C. § 1983 does not provide a cause of action for a violation of the Minnesota Constitution and the Minnesota legislature has not enacted a statute similar to § 1983. Plaintiffs are therefore not entitled to relief under 42 U.S.C. § 1983 for any alleged violation of the Minnesota Constitution." *Daywitt v. Minnesota Dep't of Human Servs.*, No. CV 16-648 (WMW/FLN), 2017 WL 8947245, at *4 (D. Minn. Jan. 27, 2017), *R.&R. adopted as modified on other grounds*, 2017 WL 1406374 (D. Minn. Apr. 20, 2017); *see also Alexander v. Hedback*, No. CIV. 11-3590 ADM/JSM, 2012 WL 2004103, at *6 n.8 (D. Minn. June 5, 2012), *aff'd*, 718 F.3d 762 (8th Cir. 2013) ("As a threshold matter, because § 1983 requires a violation of the U.S. Constitution or laws of the United States, to the extent that Andrew Alexander's § 1983 claims are based on the Minnesota Constitution . . . they are dismissed with prejudice as to all Defendants.").
> 
> Therefore, to the extent that Plaintiff's § 1983 claims are based on the Equal Protection provision of the Minnesota Constitution, any such claims should be dismissed with prejudice.
> 
> The Court also agrees with Defendants that Plaintiff's Complaint fails to state a claim under the Minnesota Constitution. The Equal Protection Clause of the Minnesota Constitution provides that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. I, § 2. The Equal Protection Clause "mandate[s] that all similarly situated individuals shall be treated alike." *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn. 2000). Indeed, "the Equal Protection Clause . . . keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *See State v. Cox*, 798 N.W.2d 517, 522 (Minn. 2011) (citations omitted). An equal-protection challenge requires an initial showing by the plaintiff that similarly situated persons have been treated differently. *Id.* at 521.

> In order to allege a claim based on equal protection rights under the Minnesota Constitution, a plaintiff must allege that he has been improperly treated differently than similarly situated persons. *See Odunlade v. City of Minneapolis*, 823 N.W.2d 638, 648 (Minn. 2012); *Forslund v. State*, 924 N.W.2d 25, 36 (Minn. Ct. App. 2019). A failure to do so warrants dismissal. *See Xiao v. Rodriguez*, No. A18-0646, 2019 WL 1983488, at *6 (Minn. Ct. App. May 6, 2019), *rev. denied* (Aug. 6, 2019) ("Appellant failed to sufficiently allege that other students treated more favorably were similarly situated to appellant and alike in all relevant ways. Therefore, the district court did not err in dismissing appellant's equal-protection claims.").
>
> In this case, Plaintiff makes no allegation he was treated differently from similarly situated individuals, and therefore his state law equal-protection claim should be dismissed without prejudice.

(Dkt. 62 at 17-18, *as adopted by* Dkt. 72.)

There is nothing in the proposed amended complaint that remedies the deficiencies set forth in the Report and Recommendation. The proposed amended complaint, like the Complaint, fails to make a plausible allegation that Plaintiff was treated differently from similarly situated individuals, and therefore his state law equal-protection claim is futile.

### 2. State Due Process Claim

From what this Court can discern, Plaintiff is attempting to assert a due process claim under Article I, § 7 of the Minnesota Constitution based on protections afforded by Minn. Stat. §§ 253B.03 and 609.2325. (Dkt. 68-2 ¶¶ 76-83.) However, the Eighth Circuit, in considering a claim under Article I, § 7 of the Minnesota Constitution pertaining to a refusal to provide access to and copies of a township's public documents, has concluded that "there is no private cause of action for violations of the Minnesota Constitution." *Eggenberger v. W. Albany Tp.*, 820 F.3d 938, 941 (8th Cir. 2016), *cert. denied sub Eggenberger v. W. Albany Tp., Minn.,* nom. 137 S. Ct. 200 (2016) (citations

14

omitted); *but see*, *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985). Because the due process claim is futile, the Court denies the motion to amend the Complaint as it relates to this claim.[3]

**C.    Fourth Amendment Claims**

Defendants complain that Plaintiff continues to reference the Fourth Amendment throughout the proposed amended Complaint (Dkt. 68-2 ¶¶ 4, 28, 32-33, 41, 43, 51, 60, 62, 72-73, 83, 92-93, 102-03), even though the Court has already dismissed such claims. (Dkt. 73 at 7.) Plaintiff acknowledges this, but argues he still has the right to assert a Fourth Amendment claim via the Fourteenth Amendment. (Dkt. 79 at 7-8.) The Court previously dismissed Plaintiff's Fourth Amendment Claims:

> "As a civilly committed individual, Plaintiff's status is analogous to a pretrial detainee, and therefore any excessive force claim comes under the Fourteenth Amendment rather than the Fourth Amendment." *Schlumpberger v. Osborne*, No. 16-CV-78 (SRN/TNL), 2019 WL 1118912, at *12 (D. Minn. Jan. 25, 2019), *R.&R. adopted*, 2019 WL 927322 (D. Minn. Feb. 26, 2019) (citing *Kingsley v. Hendrickson*, ⎯⎯ U.S. ⎯⎯, 135 S. Ct. 2466, 2475 (2015);[4] *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001)). The same is true for a deliberate indifference claim brought by a civilly committed individual. *See Ambrose v. Puckett*, 198 F. App'x 537, 539-40 (7th Cir. 2006) ("Since Ambrose is not serving a criminal sentence but rather is civilly committed, his deliberate-indifference claim arises under the Due Process

---

[3]    Plaintiff has clarified that his claim for punitive damages is based on Minnesota Statutes §§ 549.191 and 549.20. (Dkt. 69 at 6-8.) Because all state law claims have been dismissed from the Complaint and the proposed state law claims are futile, there is no basis for punitive damages under Minnesota law, making the claim for punitive damages futile.

[4]    Plaintiff cites to decisions in *Kingsley* and *Neers*, *supra*, as well as *Serna v. Goodno*, 567 F.3d 944 (8th Cir. 2009), for the proposition that the Fourth Amendment applies to claims brought by pretrial detainees if the use of force is deliberate. (Dkt. 79 at 8.) However, none of these cases authorizes such a claim in this case. *Kingsley* and *Neers* applied the Fourteenth Amendment to an excessive force claim as it relates to pretrial detainees and *Serena* pertains to the challenge of a search.

15

> Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment."); *see also Hartleib v. Carey*, No. CV 15-3357 ADM/FLN, 2016 WL 6762401, at *2 (D. Minn. Nov. 15, 2016) (applying the Due Process Clause of the Fourteenth Amendment to a claim for deliberate indifference claim brought by a civilly committed detainee in MSOP).
>
> As such, any claims for excessive force or deliberate indifference under the Fourth Amendment should be dismissed with prejudice.

(Dkt. 62 at 18-19, *as adopted by* Dkt. 72.)

The Court is not clear as to why Plaintiff would like to assert a claim under the Fourth Amendment, given that he can seek relief for the same acts under the Due Process Clause of the Fourteenth Amendment, but nevertheless his Fourth Amendment claims are futile for the reasons set forth in the Report and Recommendation.

### D.    Amended Federal Claims Against Sheriff Litman

The Court previously dismissed Plaintiff's constitutional claims against Sheriff Litman because he failed to allege that Sheriff Litman actively participated in the transport that resulted in Plaintiff's alleged injuries. (Dkt. 62 at 19-20, *as adopted by* Dkt. 72.))  In addition, the Court found that Plaintiff failed to adequately allege a supervisory liability against Sheriff Litman under § 1983:

> "While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue." *Jackson*, 747 F.3d at 543 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)).  Direct action, as set forth above, in this context can include a violation arising out of an unconstitutional policy or custom.  *See A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 727-28 (8th Cir. 2018).
>
> Plaintiff argues in his opposition that he did allege in his Complaint that Sheriff Litman is in charge of training and that such a failure to properly train on a BRS could lead to injury.  (Dkt. 35 at 7-8.)  Indeed, Plaintiff alleges in

16

> his Complaint that Sheriff Litman "is responsible for the development and implementation of policies, procedures, including training for any Deputy Sheriff" and that "BRS causes physical injury when used improperly, or otherwise when used by persons untrained in the procedures and guidelines as set out by the manufacturer of the BRS." (Dkt. 1 ¶¶ 9, 43.)
>
> However, Plaintiff's allegations concerning Sheriff Litman's supervisory responsibilities are overwhelmingly vague. There are no allegations regarding how Sheriff Litman failed to train Deputy Phinney, or other subordinates, in BRS. Moreover, when "a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)). Here there is no allegation that Sheriff Litman had notice of a pattern of unconstitutional acts committed related to BRS. *See Fahra v. Weyker*, No. 16CV1146 (JNE/TNL), 2017 WL 3421387, at *6 (D. Minn. Aug. 9, 2017) (dismissing supervisory liability claim under § 1983 finding that "[i]gnoring conclusory or unsupported allegations, Fahra does not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew."). Plaintiff's allegations are little different than conclusory assertions claiming that Sheriff Litman should be held liable because he had supervisory authority over others who acted wrongfully—the very type of claim specifically precluded under § 1983. *See Harris*, 489 U.S. at 385.
>
> As such, Plaintiff's § 1983 claims against Sheriff Litman should be dismissed without prejudice.

(*Id.* at 21-22.)

As part of his proposed amended complaint, Plaintiff claims to have remedied the defects in the amended complaint "because Defendant Litman has failed to introduce policies and procedures to protect plaintiff from physical harm by his agents, he is negligent of his duties." (Dkt. 79 at 9.)

17

The proposed amended complaint alleges that Sheriff Litman is directly responsible for developing specific training of the employees he deputizes and that Sheriff Litman has not developed or implemented any specific policy to direct and/or train his deputies on how to handle and treat nonviolent, noncriminal civil detainees when transporting them due to writs issued by the courts.  (Dkt. 68-2 ¶¶ 14-15.)  Plaintiff also alleges that Sheriff Litman utilizes at least ten specific vehicles dedicated to the transport of citizens around the county and at least some of those vehicles (including available squad cars), retain safety equipment, such as seatbelts and/or padding, that would protect a vulnerable adult from harm, which could have been used for his transport.  (Dkt. 68-2 ¶¶ 16-18.)  According to the proposed amended complaint, Sheriff Litman individually failed to protect Plaintiff, which is his responsibility, by failing to develop safety procedures that would have protected Plaintiff from physical harm at the hands of Deputy Phinney, including by failing to directly supervise Deputy Phinney to ensure: his training using restraints was current; Deputy Phinney's evaluation of security risks with respect to whether restraints are necessary for transport; and whether Deputy Phinney was using the safest vehicles for patients who are caused to be physically vulnerable by the use of restraints; and by failing to provide training that included instruction that mental health patients are not to be humiliated through public disparagement.  (Dkt. 68-2 ¶¶ 25-26.)  With respect to the various counts, Plaintiff alleges that Sheriff Litman ordered Deputy Phinney to transport Plaintiff to and from state district court and is solely and directly responsible for the proper training of his deputies; is solely and directly responsible for the development of proper and meaningful implementation of internal policy and

procedure through the education and training of his employees to protect Plaintiff from maltreatment; and is directly responsible for the humans constrained in his care. (Dkt. 68-2 ¶ 45.) In addition, Plaintiff alleges that Sheriff Litman is and/or should be aware of Minnesota statutes and practices and is responsible for developing and implementing appropriate St. Louis County Sheriff's Office policies and procedures for the proper care and treatment of civil committees under the care of the St. Louis County Sheriff for transportation to and from court, the lack of which resulted in Plaintiff's physical and emotional trauma, including due to being forced to walk in public for more than 40 yards in manacles and restraints. (Dkt. 68-2 ¶¶ 65, 85, 88, 105.)

While Plaintiff has added more allegations with respect to Sheriff Litman, he has not adequately alleged a supervisory liability claim under § 1983 because the proposed amended complaint fails to plausibly allege that Sheriff Litman had notice of a pattern of unconstitutional acts committed by Deputy Phinney (or other deputies, for that matter) related to the transport and/or restraint of civil committees that would show that Sheriff Litman (as Deputy Phinney's supervisor) personally knew of the actions of his subordinates. *See Fahra*, 2017 WL 3421387, at *6. As such, the motion to amend is denied on futility grounds with respect to the Section 1983 claims against Sheriff Litman.

## IV.  ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. 68) is **DENIED**.

DATED: May 29, 2020                                  *s/ Elizabeth Cowan Wright*
                                                     ELIZABETH COWAN WRIGHT
                                                     United States Magistrate Judge